# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BALA SATYA MANI SHANKAR KARRI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:22-cv-00528** |
| **BMW (US) HOLDING CORP.; AN** | ) | **Judge Aleta A. Trauger** |
| **LUXURY IMPORTS OF SAN DIEGO, INC.** | ) | |
| **d/b/a BMW OF ENCINITAS; SONIC** | ) | |
| **AUTOMOTIVE OF NASHVILLE, LLC d/b/a** | ) | |
| **BMW OF NASHVILLE; BMW FINANCIAL** | ) | |
| **SERVICES; and SESHA MADHURI MERLA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

AN Luxury Imports of San Diego, Inc. d/b/a BMW of Encinitas ("BMW Encinitas") has filed a Motion to Dismiss Amended Complaint or, In the Alternative, to Stay Litigation and Compel Mediation and/or Arbitration (Doc. No. 26), to which Bala Satya Mani Shankar Karri has filed a Response (Doc. No. 29), and BMW Encinitas has filed a Reply (Doc. No. 32). BMW (US) Holding Corp. ("BMW Holding") and BMW Financial Services NA, LLC ("BMW Financial") (collectively, "BMW Corporate Entities") have filed a Motion to Compel Arbitration and to Dismiss or, Alternatively, to Stay (Doc. No. 33), to which Karri has filed a Response (Doc. No. 37), and the BMW Corporate Entities have filed a Reply (Doc. No. 46). Sesha Madhuri Merla has filed a Motion to Dismiss for Insufficient Service of Process and for Lack of Subject Matter and Personal Jurisdiction (Doc. No. 47), to which Karri has filed a Response (Doc. No. 54). Karri has filed a Motion for Permission to Conduct Limited Discovery and for Evidentiary Hearing (Doc. No. 58), to which the BMW Corporate Entities have filed a Response

(Doc. No. 49), and BMW Encinitas has filed a separate Response (Doc. No. 61). For the reasons set out herein, the motions to compel arbitration will be granted, Merla's motion will be construed as a motion for remand and granted, and the motion for permission to conduct discovery and present evidence at a hearing will be denied.

## I. BACKGROUND[1]

Karri and Merla met in India in 2011, and each moved separately to the United States in 2015. (Doc. No. 22 ¶¶ 6–7.) Karri now lives in Metropolitan Nashville-Davidson County, Tennessee, while Merla lives in Montgomery, Alabama. (*Id.* ¶¶ 4, 25.) In November of 2020, Karri loaned Merla sums cumulatively totaling a little over $30,000, in order to assist with what Merla told Karri were expenses related to the health of Merla's mother. Merla agreed to repay the debt in monthly installments, but she stopped paying after six months. (*Id.* ¶¶ 8–17.)

Around the time of the loans, Karri also agreed to serve as the co-signer for Merla's purchase of a vehicle from BMW Encinitas. (*Id.* ¶¶ 19–20.) Around November 18, 2020, however, Karri spoke with a representative of BMW Encinitas, Andrew Wood, and told Wood that he was starting to have second thoughts. Wood assured Karri that he could sign the required documents and still "cancel the contract at any time prior to delivery of the car." (*Id.* ¶ 24.) On November 19, 2020, an apparent employee of Maverick Signings brought "various documents related to the purchase" of the vehicle to Karri's home, and Karri signed them. (*Id.* ¶ 25.) Among the document that Karri signed was a Motor Vehicle Retail Installment Contract. (*Id.*)

In the following days, however, Karri came to believe that Merla had been misrepresenting the facts related to her mother's health, and, on November 24, 2020, Karri contacted Merla and told her that he no longer wished to participate in the transaction with BMW

---

[1] Unless otherwise indicated, the facts herein are taken from the Amended Complaint (Doc. No. 22) and are accepted as true for the purposes of the pending motions.

Encinitas. He asked Merla to contact Wood and tell him that Merla and Karri were "cancelling the contract and would not accept delivery of the vehicle." (*Id.* ¶ 29.) Later, Merla told Karri that she had done so. (*Id.*) On the same day, Karri called BMW Encinitas himself and told Wood that he wished to cancel the contract. (*Id.* ¶ 30.) Karri asked that Wood send "an email confirming the contract was cancelled." (*Id.* ¶ 32.) Wood complied and sent the following email to Merla and Karri:

> Hi Guys,
>
> Your contract is cancelled. Since you never took delivery of the car, there is nothing you need to sign.

(Doc. No. 55-2 at 1.)

Several months passed, during which Karri believed that any dealings associated with the aborted purchase had been concluded. On July 4, 2021, however, Karri received an email from BMW Financial, informing him that an account for which he was responsible was delinquent. (Doc. No. 22 ¶¶ 33–34.) Karri looked into the matter and learned that BMW Encinitas had, in fact, delivered a vehicle—a 2020 BMW 228i Xdrive Coupe—to Merla. (*Id.* ¶ 35.) Karri suggests that "BMW Encinitas . . . fraudulently used [Karri's] personal identifying information and added [Karri] as a co-signor, without [Karri's] knowledge or consent, to a new contract for [Merla] to purchase" the vehicle. (*Id.* ¶ 36.)

On May 17, 2022, Karri filed a Complaint in Davidson County Circuit Court, naming as defendants BMW Holding, BMW Financial, BMW Encinitas, Merla, and a Nashville-based BMW dealership, Sonic Automotive of Nashville, LLC d/b/a BMW of Nashville ("BMW Nashville"). (Doc. No. 1-2 at 2.) The Complaint included claims pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and, on July 13, 2022, the BMW Corporate Entities filed a Notice of Removal to this court based on the court's federal question jurisdiction.

3

(Doc. No. 1.) The BMW Corporate Entities stated that they were "fully reserving the right to object to service, jurisdiction, and venue" and did not intend to "waiv[e] any other defenses or objections, including, but not limited to, the right to arbitration." (*Id.* at 1.) The BMW Corporate Entities stated that "[a]ll necessary and properly joined defendants ha[d] consented to the removal of this action within the time legally permitted," but they acknowledged that Merla had not yet been served and might object once she was. (*Id.* at 1, ¶¶ 2, 14.)

On June 20, 2022, the BMW Corporate Entities, BMW Encinitas, and BMW Nashville filed a Joint Motion for a More Definitive Statement (Doc. No. 10), asking the court to require Karri "to amend his Complaint to cure his shotgun pleading deficiencies." (*Id.* at 1.) The movants stated that they were "fully reserving the right to object to service, jurisdiction, and venue, and without waiving any other defenses or objections, including, but not limited to, the right to compel arbitration." (*Id.*) Shortly thereafter, the parties filed a proposed Agreed Order granting the motion, and the court entered the Order. (Doc. Nos. 20, 21.) On September 21, 2022, Karri filed a Amended Complaint. (Doc. No. 22.) Although the Amended Complaint contained the same defendants as the original Complaint, Karri later filed a motion to drop BMW Nashville pursuant to Rule 21 of the Federal Rules of Civil Procedure, which the court granted. (Doc. Nos. 31, 40.)

On October 6, 2022, BMW Encinitas filed a Motion to Dismiss Amended Complaint or, In the Alternative, to Stay Litigation and Compel Mediation and/or Arbitration. (Doc. No. 26.) BMW Encinitas states that, "[a]t the time Karri entered into the Retail Installment Contract, he entered into a separate Arbitration Agreement" that included the following language:

> This Arbitration Agreement ("Agreement") applies to Purchaser(s) ("you") who is/are in the process of: (1) purchasing or leasing vehicle(s) including any negotiations or application(s) for credit or other dealings or Interactions with the Dealership (which hereinafter is defined as the applicable dealership, together

with its parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective owners, directors, officers, managers, employees, vendors and agents); (2) servicing any vehicles(s) with the Dealership; and (3) reviewing, negotiating or executing any documents or agreements during the course of interactions with the dealership (collectively, including all subparts listed above, Purchaser/Dealership Dealings). You and the Dealership agree that neutral and binding arbitration on an individual basis only will be the sole method of resolving any claim, dispute or controversy (collectively, "Claims") that either Party has arising from Purchaser/Dealership Dealings, with the sole exception that either Party may file Claims in a small claims court as an alternative to proceeding with arbitration. Claims include but are not limited to the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) Claims relating to any representations, promises, undertakings, warranties, covenants or service; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and the Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Purchaser/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the Purchaser/Dealership Dealings.

(Doc. No. 26-2 at 1.)

On November 3, 2022, the BMW Corporate Entities filed their own Motion to Compel Arbitration and to Dismiss or, Alternatively, to Stay. (Doc. No. 33.) The BMW Corporate entities explained that BMW Financial was the ultimate assignee of the Motor Vehicle Retail Installment Contract and that that contract included a lengthy arbitration section providing, in part, as follows:

> **NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. . . . Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.
>
> **"Claim"** broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, purchase or condition of this Vehicle, this Contract or any resulting transaction or relationship (including any such relationship with third

5

parties who do not sign this Contract). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. However, "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court.

(Doc. No. 34-3 at 7.)

On November 25, 2022, Merla filed a Motion to Dismiss for Insufficient Service of Process and for Lack of Subject Matter and Personal Jurisdiction. (Doc. No. 47.) That motion identifies three alleged defects that, Merla argues, prevent the claims against her from proceeding. First, Merla alleges that Karri never served her with a summons and copy of the Complaint. (*Id.* at 2.) Second, Merla alleges that she has not had sufficient contacts with Tennessee for this court to exercise personal jurisdiction over her. (*Id.* at 2–3.) Third, Merla argues that the claims stated against her are state-law claims with "no connection" to Karri's federal claims and that the court therefore lacks supplemental jurisdiction. (*Id.* at 3.)

On March 28, 2023—well after the motions were fully briefed—Karri filed a Motion for Permission to Conduct Limited Discovery and For Evidentiary Hearing. (Doc. No. 58.) Karri requests "an order allowing the parties to conduct limited discovery for the purpose of determining whether a valid enforceable arbitration agreement exists; and to set an evidentiary hearing for the purpose of determining whether an arbitration agreement exists." (*Id.* at 2.) He does not otherwise describe the nature of the evidence he would seek or intend to present at such a hearing, nor does he describe any specific, contested factual issue that he believes would be determinative of any of the pending motions. Karri also does not request discovery in connection

6

with any of the other outstanding issues facing the court, such as personal or subject matter jurisdiction. BMW Encinitas and the BMW Corporate Entities oppose Karri's request on the ground that there are no contested facts material to the issues raised by their motions.

## II. MOTIONS TO COMPEL ARBITRATION

### A. Legal Standard

The question of whether the plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "strong presumption" in favor of arbitration under the FAA. *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 393 (6th Cir. 2014). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, (citing 9 U.S.C. §§ 3–4). The party opposing arbitration has the burden to prove that there is a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 750 (E.D. Tenn. 2011) (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

### B. BMW Encinitas

Karri argues that "no valid agreement to arbitrate exists" between him and BMW Encinitas because BMW Encinitas "agreed to rescind the contract it now seeks to enforce." (Doc. No. 29 at 1–2.) In support of this argument, Karri relies primarily on an Eleventh Circuit case,

7

*Reiterman v. Abid*, 26 F.4th 1226, 1232 (11th Cir. 2022). BMW Encinitas responds that, even if *Reiterman* were binding on this court, it would not apply to the claims against BMW Encinitas, because Reiterman involved an arbitration clause that was part of a rescinded contract, whereas BMW Encinitas relies on a wholly separate arbitration agreement.

Before the court can consider those arguments, however, it must address a preliminary matter. Karri argues that the court cannot consider the actual text of the arbitration agreement or purchase contract because those contracts "are hearsay and inadmissible." (Doc. No. 29 at 5.) That argument, however, ignores the well-settled principle that "[s]tatements 'that constitute verbal acts—like the words of a contract—are not hearsay.'" *Hunter v. Shield*, 550 F. Supp. 3d 500, 517 (S.D. Ohio 2021) (quoting *Ky. Petroleum Operating Ltd. v. Golden*, No. CIV. 12-164-ART, 2015 WL 927358, at *2 (E.D. Ky. Mar. 4, 2015)); *see also Preferred Properties, Inc. v. Indian River Ests., Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, e.g. the words of offer and acceptance which create a contract.'") (quoting Black's Law Dictionary). It is, moreover, well established that the court can treat documents that are integral to a plaintiff's claims and mentioned in the underlying complaint as having been "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)). Karri's Amended Complaint expressly acknowledges that he signed multiple documents in connection with the BMW sale at issue, and he has not denied or identified any reason to doubt that the copies that the defendants have provided are, in fact, accurate representations of documents included in those signings. The court accordingly will treat the documents as part of the Complaint and consider them accordingly.

8

Turning, now, to the merits of the motion to compel arbitration, the court is persuaded by the arguments put forth by BMW Encinitas. The relationship between an arbitration agreement and any other promises exchanged between the parties "turns on the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002) (quoting *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333 (5th Cir. 1987); citing *Brucker v. McKinlay Transp., Inc.*, 557 N.W.2d 536, 540 (Mich. 1997); *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 220 (Mich. Ct. App. 1995)). The arbitration agreement on which BMW Encinitas relies is plainly intended to constitute a separate agreement between the parties, not to be a part of the Motor Vehicle Retail Installment Contract. *See Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 562 (N.D. Ohio 2004) ("Where, as here, the arbitration agreement is separately negotiated and executed, [precedent] clearly would require that the Court sever its consideration of that agreement from any attack on the accompanying . . . transaction.") (discussing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–07 (1967)). Indeed, the arbitration agreement is about as clear as it could possibly be about the parties' intent to treat the agreements as distinct, stating that "[t]his Agreement is entered into contemporaneously with your Retail Installment Contract . . . ." (Doc. No. 27-2 at 1.)

Regardless of what Karri might have come to believe about the legal results of his email exchange with Wood, the four corners of the arbitration agreement reveal a meeting of the minds to execute and fully enter into a distinct arbitration contract that, by its express language, covered any claims arising out of a wide array of potential "Dealings" between Karri and BMW Encinitas, including not only Merla's physical receipt of the vehicle but also the parties'

9

negotiations and Karri's application for credit. (Doc. No. 26-2 at 1.) Karri has not identified any provision of that agreement that would cause it to lose its force simply because the sale and delivery of the underlying vehicle was never completed or seemed never to have been completed or because the separate sale contract was rescinded.

There may be other arguments available to Karri, but he has not made them. In any event, insofar as there remains any open question regarding whether the separate agreement applies to Karri's claims, that question is reserved for the arbitrator, whose express jurisdiction includes "[c]laims regarding the interpretation, scope, or validity" of the separate arbitration agreement itself. (*Id.*) If the text of an arbitration agreement "shows that the parties intended to send gateway questions of arbitrability exclusively to an arbitrator," then the court must honor that choice. *Ciccio v. SmileDirectClub*, LLC, 2 F.4th 577, 584 (6th Cir. 2021). The court will therefore enforce the parties' agreement as written and compel arbitration.

## C. The BMW Corporate Entities

Karri advances the same argument with regard to his claims against the BMW Corporate Entities: that his claims are not subject to arbitration because the Motor Vehicle Retail Installment Contract was rescinded. The analysis of that argument with regard to these claims is different, however, because the BMW Corporate Entities do not rely on the separate arbitration agreement that BMW Encinitas cites—presumably because that separate contract was not among the rights assigned to them. Rather, the BMW Corporate Entities rely on the arbitration clause that appears in the Motor Vehicle Retail Installment Contract itself, which was assigned to BMW Financial. The BMW Corporate Entities accordingly cannot rely on the "separate contract" argument that prevailed for BMW Encinitas.

10

Any argument that the rescission or cancellation of the purchase contract should spare these claims from at least *some* arbitration, however, faces another obstacle. The arbitration provision of the Motor Vehicle Retail Installment Contract expressly provides that "any dispute or controversy that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide." (Doc. No. 34-3 at 6.) That provision mirrors the well-established rule that, when a contract includes an arbitration provision as just one of its terms, challenges to the enforceability of the contract as a whole—as opposed to challenges that would implicate only the arbitration provision—are reserved for the arbitrator. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 446–47 (2006) (holding that the question of whether a "usurious interest" rate provision in a loan agreement rendered the entire contract "illegal and void *ab initio*" was for the arbitrator to decide, because the arbitration provisions were "enforceable apart from the remainder of the contract" under the severability principle); *Prima Paint*, 388 U.S. at 403–04, 406 (holding that a claim of fraud in the inducement of the contract as a whole was for the arbitrator, where the arbitration agreement provided for the arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof"); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883 (6th Cir. 2021) (holding that a minor's defense of infancy to the validity of the contract as a whole was a "matter of enforceability" delegated to the arbitrator by the arbitration agreement). Accordingly, while it may, in fact, be the case that the arbitration provision is inapplicable on the ground that the entire purchase agreement of which it was a part was rescinded or otherwise canceled, it is not up to the court to decide that issue in the first instance.

Karri argues that this case falls outside of those principles because the contract at issue was actually rescinded, not merely voidable. The Supreme Court, however, has expressly

rejected the argument that the aforementioned principles apply only to "voidable," but not "void," contracts. *See Buckeye Check Cashing*, 546 U.S. at 448. To the contrary, the Court has held that the "contracts" covered by the FAA "obviously include[] putative contracts" that may well "later prove to be void." *Id.* Such a conclusion is consistent with the express language of the arbitration provision of the Motor Vehicle Retail Installment Contract, which calls for any questions about the validity or enforceability of the contract to be decided first by the arbitrator.

The only other argument that Karri advances in opposition to the court's referring the claims against the BMW Corporate Entities to arbitration is that these defendants waived any arbitration rights that they may once have had. Karri offers a few arguments in support of a finding of waiver, the first of which is simply a repackaging of his argument regarding rescission of the contract. That argument fails for the same reason it originally did—it inherently involves a challenge to the contract as a whole and is therefore for the arbitrator.

Karri's other arguments present different angles on the general contention that the BMW Corporate Entities did not seek to compel arbitration quickly enough in this litigation—choosing instead to first remove the case, seek a more definite statement, and then seek arbitration a few weeks after the revised Complaint was filed. These arguments are also without merit. The Sixth Circuit has repeatedly cautioned that, "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *Glazer*, 394 F.3d at 450). Accordingly, an implicit waiver will only be found where "(1) the party's acts are 'completely inconsistent' with its arbitration right and (2) the party's conduct is prejudicial to an opposing party—for example, when the party significantly delays asserting its arbitration right." *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020) (quoting *Shy v.*

12

*Navistar Int'l Corp.*, 781 F.3d 820, 827–28 (6th Cir. 2015); citing *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010)). As the BMW Corporate Entities point out, however, they have repeatedly reserved the right to compel arbitration in this case, which is still in its earliest stages. Nothing about its behavior is inconsistent with seeking to compel arbitration now. Because the BMW Corporate Entities preserved their right to seek arbitration, and because they have established that the threshold question of the enforceability of the purchase contract should be sent to an arbitrator, then this court will grant their motion and compel arbitration.

**D. Request for Evidentiary Hearing/Choice Between Dismissal and Stay**

Karri has sought discovery and an evidentiary hearing on the issue of whether "a genuine issue of material fact exists as to whether a valid enforceable arbitration agreement exists in this matter." (Doc. No. 58 at 1.) For reasons that the court has already discussed, however, there is no basis for such a hearing. The plain language of the underlying agreements, as applied under the FAA, requires arbitration—at least of some gateway issues—and the court has no power to proceed otherwise.

That leaves the question of what the court should do as arbitration proceeds. The FAA instructs that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Karri has made no application for a stay in his responses to the Motions to Compel Arbitration, and the movants have expressed a preference for dismissal of the claims. The court, moreover, has not identified any prudential consideration that would support merely staying consideration of, rather than dismissing, the claims, such as a request for "preliminary injunctive relief necessary to

ensure that the arbitration process remains a meaningful one." *Tenn. Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1325 (M.D. Tenn. 1990) (Nixon, J.). The court accordingly will dismiss the claims against BMW Encinitas and the BMW Corporate Entities without prejudice while Karri, if he wishes to continue with these claims, pursues arbitration.

## III. SUFFICIENCY OF SERVICE

### A. Legal Standard

Rule 4 of the Federal Rules of Civil Procedure provides that, "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal." Fed. R. Civ. P. 4(b). Once the summons is "properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons . . . must be issued for each defendant to be served." *Id.* Unless a proper request for waiver of service is made and accepted, "proof of service must be made to the court . . . by the server's affidavit." Fed. R. Civ. P. 4(*l*)(1). The current version of Rule 4 generally allows 90 days for achieving service of process, but it permits that period to be extended for good cause:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specific time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Sixth Circuit has repeatedly held that, absent a showing of good cause for failure to meet the Rule 4(m) deadline, dismissal is required. *See, e.g., Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021) ("[U]nder Civil Rule 4(m), if the summons is not served within 90 days, the court must dismiss the action unless the plaintiff has shown 'good cause' for failing to serve within 90 days; [if good cause is shown,] then the court may extend the deadline for service."); *accord Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006)

("Dismissal of the action 'shall' follow unless the 'plaintiff shows good cause' for failure to meet the [90]-day deadline."); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal.") (citing *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) ("Absent a showing of good cause . . . , the language of Rule 4(j) [now 4(m)] mandates dismissal.").

## B. Service on Merla

There are at least two factual disputes between the parties related to the service of process upon Merla. In Merla's Motion to Dismiss, she asserts, "[u]pon information and belief," that Karri (1) "attempted to serve the incorrect individual in Pennsylvania" and (2) "neglect[ed] to even attempt proper" service of process in Merla's home state of Alabama. (*Id.*) Karri disputes both statements. First, on November 8, 2022, he filed an Affidavit of Service signed by a process server for We Serve NJ LLC, stating that he served Merla in person in Pennsylvania, where her brother allegedly lives. (Doc. No. 35.) The process server described the service as follows:

> Successful Attempt: Nov 8, 2022, 8:33 am EST at Home: 613 Albion Pl, Downingtown, PA 19335 received by MERLA, SESHA MADHURI. Age:30-40; Ethnicity: Asian American; Gender: Female; Weight: 110; Height: 5'3"; Hair: Black; Eyes: Brown;
>
> DROP SERVED ON DEFENDANT. FIRST CLAIMED TO BE MS MERLA THEN CHASED ME SAYING SHE WAS NOT AND THAT MS MERLA NO LONGER LIVED AT THE LOCATION

(*Id.* at 3.) With regard to attempts to serve Merla in Alabama, Karri has filed an Affidavit of Dr. Sanath B. Kasi Reddy, an Alabama physician who says that he is "re-married to . . . Merla . . . under the duress/blackmail of placing more false criminal allegations against me." (Doc. No. 54-1 ¶ 2.) Reddy states as follows:

15

4. During second week of October 2022, when I spoke to Sesha Merla on a telephone conversation, she mentioned a process server tried to deliver the summons at 8462 E chase pkwy, Unit 2101, Montgomery AL, but she did not open the door. . . .

5. Defendant, Sesha Merla, sent a WhatsApp text message to me on October 21st 2022 that she is leaving to her brother's (Narendra Merla and his wife Manikya Veena Beeram) house in Pennsylvania, along with our child for Diwaii-festival celebrations. She works remotely.

6. I provided Defendant, Sesha Merla's, whereabouts to Plaintiff, Satya Bala Mani Shankar Karri, to assist in effectuating service of process in this matter.

(*Id.* ¶¶ 4–6.)

Unfortunately, aside from supplying that Affidavit, Karri's Response to Merla's Motion is quite limited. Karri's attorney chose to respond to Merla's motion—which included numbered paragraphs and failed to include a memorandum in support as required by L.R. 7.01(a)(2)—as if it were a pleading; that is, the Response consists entirely of denials and admissions, numbered to mirror the motion, without citation to a single case or Federal Rule.[2] (*See* Doc. No. 54 ¶¶ 1–27.) Frankly, neither Karri's nor Merla's briefing on the issues of service and jurisdiction rises to the level of thoroughness or clarity that this court typically expects. Nevertheless, the materials that have been provided suggest that the dispute between the parties on this issue is fundamentally factual, not legal, so the limitations of the briefing are not as much of an impediment as they could be.

The issue of service of process in this case hinges on a question of he said/she said—or, if one wants to be technical, they said/she said, given that both the process server and Reddy have contradicted aspects of Merla's assertions. Service of process, however, is not one of the issues on which Karri has sought an evidentiary hearing or discovery. He limits those requests to the issue of the validity of his contract(s) with BMW Encinitas and BMW Financial. Merla has not

---

[2] There is one statutory citation—to the language of the diversity jurisdiction statute.

16

requested a hearing either. In fact, she did not even seek permission to file a Reply, so she has not confirmed or denied Karri's accusations, despite the fact that those accusations, if true, would mean that Merla, through counsel, misrepresented facts to the court. Since neither party has identified these issues as requiring a further hearing, and the court believes that they can be resolved based on the materials provided, the court will do so.

"The weight of authority is clear that '[a] process server's affidavit of service . . . establishes a presumption of [proper] service.'" *Baxter Bailey Invs., LLC v. Harrison Poultry, Inc.*, No. 11-3116, 2012 WL 4062771, at *2 (W.D. Tenn. Sept. 14, 2012) (quoting *McCombs v. Granville Exempted Vill. Sch. Dist.*, No. 2:07-CV-00495, 2009 WL 467066, at *4 (S.D. Ohio Feb. 24, 2009)). That presumption can be rebutted by a defendant's "sworn denial of receipt of service," *id.* (quoting *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)), but Merla has filed no such sworn denial. Rather, she had her attorney assert unsupported facts in her briefing. In contrast, the conclusion that Merla was, in fact, successfully served is supported by the sworn statement of the process server and bolstered by context provided in the sworn statement of Reddy. The evidence in support of a finding of proper service is therefore decidedly superior to the evidence against it, and the court finds that proper service was effected on Merla on November 8, 2022, the date indicated by the process server.

## IV. JURISDICTION

### A. Personal Jurisdiction

#### 1. Legal Standard

Rule 12(b)(2) provides for dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). When a defendant files a motion pursuant to Rule 12(b)(2) in a district court, the court has discretion to either decide the motion on the pleadings alone, permit discovery on

the issue, or conduct an evidentiary hearing to resolve factual questions. *See, Inc. v. Imago Eyewear Pty.*, Ltd., 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The plaintiff's burden of proof is "relatively slight where . . . the . . . court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (internal quotation marks and citation omitted).

When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings in a light most favorable to the plaintiff. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). To defeat the Rule 12(b)(2) motion in such a case, the nonmoving party "need only make a *prima facie* showing of jurisdiction." *Id.* "[A] court disposing of a 12(b)(2) motion [without an evidentiary hearing] does not weigh the controverting assertions of the party seeking dismissal . . . because [the courts] want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe*, 89 F.3d at 1262 (internal quotation and emphasis omitted). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.*

## 2. Personal Jurisdiction Over Merla

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts," *Walden v. Fiore*, 571 U.S. 277, 283 (2014), and, thus, in order for this court to have personal jurisdiction over a defendant, the plaintiff must show that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Where

18

the state long-arm statute extends to the limits of the due process clause" —as Tennessee's does—"the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates due process." *Bridgeport Music, Inc. v. Still N. the Water Publ'*g, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996); *see also Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

"Personal jurisdiction may be found either generally or specifically." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007)). "A court may assert general jurisdiction . . . to hear any and all claims against [a defendant] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction, however, "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). A plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc.*, 503 F.3d at 549.

There is no plausible case that Merla, who lives in Alabama and spends some of her time with family in Pennsylvania, is subject to general jurisdiction in Tennessee. The court's authority over her, therefore, must be based on specific jurisdiction. In order for this court to exercise such jurisdiction over a non-resident defendant consistently with due process, the defendant must have had "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d

409, 417 (6th Cir. 2003) (quoting *Int'l Shoe*, 326 U.S. at 316). Minimum contacts typically exist where a defendant purposefully avails herself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The assertion of specific jurisdiction "depends on an affiliation between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (internal quotation and citation omitted). In evaluating a claim of specific personal jurisdiction, the court must apply the three-part test set forth by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state";
>
> (2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state; and
>
> (3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

*Id.*

The Sixth Circuit has defined purposeful availment as "something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities." *Bridgeport Music*, 327 F.3d at 478 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir. 2002)). A defendant purposefully avails himself of a forum's protections when his "conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* at 479 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)).

The purposeful availment requirement prevents jurisdiction from arising "as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King*, 471 U.S. at 475). The relevant inquiry is "whether the defendant has 'engaged in some overt actions connecting the defendant with the forum state.'" *Id.* at 480 (quoting *Dean*, 134 F.3d at 1271). Put another way, "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 884 (2011).

Reviewing Karri's allegations regarding Merla, with the understanding that Karri lives in Tennessee, provides a clear picture of these events' connection to this jurisdiction. The Amended Complaint describes the counts against Merla as follows:

### COUNT NINE - BREACH OF CONTRACT
### (Against Defendant, Sesha Merla)

. . . .

70. Defendant, Sesha, borrowed money from Plaintiff.

71. Defendant, Sesha, promised to repay Plaintiff for the funds she borrowed.

72. Plaintiff has made a demand to Defendant, Sesha, to repay the borrowed money.

73. Defendant, Sesha, has failed to make the agreed upon payments to Plaintiff and stated she will not make any further payments to Plaintiff.

74. Plaintiff has suffered damages caused by the breach of Defendant, Sesha.

### COUNT TEN – FRAUD
### (Against Defendant, Sesha Merla)

. . . .

76. Plaintiff avers Defendant, Sesha, intentionally misrepresented that she would repay Plaintiff.

77. Plaintiff avers Defendant, Sesha, knew she was not going to repay Plaintiff.

21

78. Plaintiff avers he has suffered injury as a result of his reliance upon Defendant, Sesha's, misrepresentations.

## COUNT ELEVEN - UNJUST ENRICHMENT
## (Against Defendants, Sesha Merla, and BMW (US) Holding Corp)

. . . .

80. Plaintiff avers a benefit was conferred on Defendants, Sesha Merla and BMW (US) Holding Corp.

81. Defendant, Sesha, received a new BMW she otherwise would not have been able to purchase.

82. Defendant, BMW (US) Holding Corp, received profit from the sale of the BMW to Defendant, Sesha.

83. Plaintiff avers Defendants, Sesha Merla and BMW (US) Holding Corp have appreciated the benefits they received.

84. Plaintiff avers Defendants, Sesha Merla and BMW (US) Holding Corp, accepting the benefits under the circumstances would make it inequitable for them to retain the benefit without paying for the benefit.

(Doc. No. 22 ¶¶ 69–78.) Counts Nine and Ten arise out of communications between Merla and Tennessee resident Karri in which Merla specifically requested that Karri dip into his personal funds to provide loans to Merla. Count Eleven differs in that Merla was soliciting a cosigner rather than funds, but that does nothing to change the fact that the person she was soliciting was in Tennessee and would be granting her the requested benefit from Tennessee. If Merla failed to pay for the car she obtained, then enforcement against Karri would reach directly into Tennessee—which appears to be exactly what happened.

Merla has not identified any basis for concluding that such knowing, intentional solicitation of benefits from a Tennessee resident, culminating in multiple actual transfers of funds from that Tennessee resident and the assumption of legal responsibilities by that resident, would not satisfy the requirement of purposeful availment for the relatively narrow purpose of

claims arising directly out of those transactions. The court accordingly has personal jurisdiction over Merla for the purposes of the claims stated against her.

## C. Subject Matter Jurisdiction/Removal

The issues of subject matter jurisdiction raised by the dispute between Karri and Merla are surprisingly complex for what is, in many ways, a straightforward interpersonal financial dispute. For example, it is debatable whether supplemental jurisdiction should be available to Karri for the claims that are not directly related to the vehicle purchase, which is the only aspect of this case tied to a federal claim. Diversity jurisdiction might be available in the alternative, but it is *also* debatable whether the Amended Complaint, which puts no particular number on the damages requested, seeks damages sufficient to satisfy diversity jurisdiction's amount-in-controversy requirement.[3] It may even be debatable whether diversity jurisdiction is available for the court to consider, given that it was not cited as the basis for removal and is not expressly asserted in the Amended Complaint. The applicable caselaw, moreover, is relatively limited when it comes to this particular situation—in which jurisdiction is being contested by a

---

[3] At first glance, it may appear that diversity jurisdiction could not apply to this case due to the lack of "complete diversity [of the parties] such that no plaintiff is a citizen of the same state as any defendant." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir.2010) (citation omitted). While all of the current defendants are from states other than Karri's home of Tennessee, settled caselaw requires the court to determine jurisdiction based on the citizenship of the parties at the commencement of litigation. *SMR Techs., Inc. v. Aircraft Parts Int'l Combs, Inc.*, No. 00-2563, 2004 WL 595010, at *3 (W.D. Tenn. Mar. 23, 2004) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957); *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir.1970)). When this case was begun, one of the defendants—BMW Nashville—appeared, from its name, to be a Tennessee company, at least as a practical matter. Practicality, however, is not always what matters in the complicated world of federal jurisdiction. BMW Nashville is an LLC, and the Sixth Circuit has expressly rejected the argument that "a limited liability company, like a corporation, is a citizen of its states of organization and principal place of business." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Rather, "a limited liability company has the citizenship of each of its members." *Id.* (citing *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732–33 (6th Cir. 2002). According to BMW Nashville's Business Entity Disclosure, "[t]he sole member of Sonic Automotive of Nashville, LLC is Sonic Automotive of Nevada, Inc.," which "is a Delaware corporation, with its principal place of business in Carson City, Nevada." (Doc. No. 18 at 3.) It therefore appears likely that there was, in fact, complete diversity between the parties at the time of filing.

23

defendant (1) post-removal, (2) over the plaintiff's objections, and (3) with the possibility of an alternative basis for jurisdiction that was not listed in the Notice of Removal.

There is, however, a procedural issue that goes some distance toward explaining why this case has presented as many unique considerations as it has: the fact that Merla had an absolute right to block removal simply by refusing to consent to it, which she was not given the chance to do, because she was not served until after this case was already in federal court. The strangeness of that situation is enhanced by the fact that Karri, who originally chose to file in state court, has now effectively reversed his preference and is arguing *in favor* of this court's keeping the case. Matters are complicated even further by the fact that the parties who actually *did* originally prefer federal court are now being dismissed from the case in favor of arbitration. The court, accordingly, will start by unpacking this unusual procedural situation and then turn, if necessary, to any substantive matters that remain.

As the court has now held, service on Merla was adequately effected on November 8, 2022. The procedure for addressing post-removal service on a defendant is set forth in 28 U.S.C. § 1448:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.
>
> *This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case.*

*Id.* (emphasis added). That provision "preserves the right of a defendant who is served with process after removal to move to remand." *Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12CV86-SPM/GRJ, 2013 WL 3321926, at *1 (N.D. Fla. July 1, 2013) (citing *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355 n.6 (1999)), *aff'd sub nom. Petrano v. Old Republic Nat. Title Ins. Co.*, 590 F. App'x 927 (11th Cir. 2014).

Typically, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447. Section 1448, however, "explicitly reserves the unserved defendant's right to take action (move to remand) *after* service is perfected." *Murphy Bros.*, 526 U.S. at 355 n.6. One Tennessee district court described the process envisioned by that rule as follows:

> Section 1448 contemplates that causes will sometimes be removed before all of the defendants have been served with process. A defendant subsequently served may move to remand the cause, thus presenting the issue of whether the cause could properly have been removed without his joinder. The necessary inference is, that if he had been served with process along with the other defendants and the cause was not removable without his joinder, he could have prevented removal by his non-joinder in the removal petition. There would seem to be no difference in principle between the two situations.

*Smith v. Waldemar*, 85 F. Supp. 36, 37 (E.D. Tenn. 1949).

Because Merla was not served until November 8, 2022, the 30-day period in which she was free to seek a remand began on that date. Although Merla did not file something labeled as a "motion to remand" within that period, she *did* file a motion seeking dismissal on the basis of subject matter jurisdiction on November 25, 2022. (Doc. No. 47.) That motion, moreover, was, as a practical matter, always a motion to remand, because, by statute, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction" in a case that has been previously removed, "the case shall be remanded." 28 U.S.C. § 1447(c). The court accordingly construes the Motion to Dismiss as a timely motion for remand and construes Merla's opposition to this court's exercise of jurisdiction as confirmation of her refusal to consent, retroactively, to removal.

25

Pursuant to what is often referred to as the "rule of unanimity*," Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). "In order to satisfy the rule of unanimity in the Sixth Circuit, 'all parties that have been served or otherwise properly joined may (1) join in the removal, (2) file a written consent to removal, or (3) oppose a motion to remand.'" *Cincinnati Ins. Co. v. Omega Elec. & Sign Co.*, No. 1:22-CV-12964, 2023 WL 372642, at *4 (E.D. Mich. Jan. 24, 2023) (quoting *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 501 (6th Cir. 2010)). Merla, who has now been served and is fully joined in this case, has done none of those three things. Removal has therefore been rendered ineffective.

When the BMW Corporate Entities and BMW Encinitas filed their Notice of Removal, they admitted that they had not received consent from Merla and implicitly acknowledged that, if she was actually served, it might pose an obstacle to the removal of the case. Indeed, they specifically requested that the court sever and remand the claims against Merla if the BMW-affiliated defendants were "unable to obtain the consent of Merla to this removal if she is properly joined and served." (Doc. No. 1 ¶ 14.) That possibility has now come to pass: Merla has been served, and she has not consented. If the claims against BMW Encinitas and the BMW Corporate Entities were not bound for arbitration, it might be necessary for the court to sever the claims, as those defendants admitted might be necessary. Because those claims are being referred to arbitration and dismissed, however, it suffices for the court to simply remand the only claims remaining to the Circuit Court for Davidson County.

# V. CONCLUSION

For the foregoing reasons, BMW Encinitas' Motion to Dismiss Amended Complaint or, In the Alternative, to Stay Litigation and Compel Mediation and/or Arbitration (Doc. No. 26) and the BMW Corporate Entities' Motion to Compel Arbitration and to Dismiss or, Alternatively, to Stay (Doc. No. 33) will be granted. Merla's Motion to Dismiss for Insufficient Service of Process and for Lack of Subject Matter and Personal Jurisdiction (Doc. No. 47) will be construed as a motion to remand and granted, and Karri's Motion for Permission to Conduct Limited Discovery and for Evidentiary Hearing (Doc. No. 58) will be denied. The claims against BMW Encinitas and the BMW Corporate entities will be referred to arbitration and dismissed without prejudice, while the remaining claims will be remanded to the Circuit Court for Davidson County.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge